

(151)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, .        Case No. 2:17-cr-00137-PD-1

             Plaintiff,        .

      v.                       .      U.S. Courthouse
                                      601 Market Street
RUFUS SETH WILLIAMS,                  Philadelphia, PA 19106
ET AL.,

             Defendant.        .      October 24, 2017
. . . . . . . . . . . . . . ..        2:01 p.m.

FILED
NOV 14 2017
KATE BARKMAN, Clerk
By_____ Dep. Clerk


SENTENCING HEARING
BEFORE THE HONORABLE PAUL S. DIAMOND
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Plaintiff            ROBERT A. ZAUZMER
United States:               U.S. ATTORNEY'S OFFICE
                             615 Chestnut Street, Suite 1250
                             Philadelphia, PA 19106


For Defendant                THOMAS F. BURKE
Rufus Seth Williams:         Borum Burke & Didonato LLC
                             1500 John F Kennedy Blvd., Suite 900
                             Philadelphia, PA 19102


Audio Operator:              BRIAN JOHNSON

TRANSCRIBED BY:              GILLIAN LAWRENCE
                             Lawrence Court Transcription & Video
                             P.O. Box 530790
                             DeBary, FL 32753
                             386.216.5921


Proceedings recorded by electronic sound
recording, transcript produced by transcription service.

2

# I N D E X

|                                          | PAGE |
|------------------------------------------|------|
| LETTER FROM SONITA WILLIAMS              | 10   |
| ALLOCUTION OF THE DEFENDANT              | 17   |
| INTENDED SENTENCE STATED BY THE COURT    | 32   |
| JUDGMENT OF THE COURT                    | 33   |
| CERTIFICATE OF COURT TRANSCRIBER         | 42   |

# E X H I B I T S

EXHIBITS                                        ID.   EVD.

NONE

1     (Call to Order of the Court at 2:01 p.m.)

2         JUDGE PAUL S. DIAMOND:  Please be seated, everybody.

3 Good afternoon.

4         MR. ROBERT A. ZAUZMER:  Good afternoon, Your Honor.

5 Good afternoon.

6         MR. THOMAS F. BURKE:  Good afternoon, Your Honor.

7         MS. JACKIE WIDMEIER:  Good afternoon, Your Honor.

8         THE COURT:  We are here for sentencing in this

9 matter.  The sentencing is on the basis of a guilty plea to

10 Count 1 of the superseding indictment that charged the

11 defendant with travel and use of interstate facilities to

12 promote and facilitate bribery, contrary to Pennsylvania law in

13 violation of federal law.

14         On June 29th of this year, Mr. Williams appeared

15 before me and pled guilty to Count 1 of the superseding

16 indictment; I conducted the colloquy and accepted the guilty

17 plea.  The parties also stipulated that Mr. Williams committed

18 the offenses charged in Counts 2 through 29 of the superseding

19 indictment.  Ten additional counts of travel and use of

20 interstate facilities to promote and facilitate bribery,

21 contrary to Pennsylvania law, in violation of federal law.  Two

22 counts of obstructing and affecting interstate and foreign

23 commerce by extortion under color of official right in

24 violation of federal law.  Two counts of scheming to defraud

25 the City and County of Philadelphia and its citizens of

4

1 defendant's honest services, also in violation of federal law.

2 Twelve counts of wire fraud in violation of federal law, and

3 two counts of mail fraud.

4          I have received a revised presentence investigation

5 report, a sentencing recommendation, the government's

6 sentencing memorandum and motion for order of forfeiture.   The

7 defendant's sentencing memorandum with numerous letters in

8 support.   I received a letter from Ms. Dreisbach (Phonetic),

9 and a letter from Ms. Motherall (Phonetic).   I today, received

10 a letter from Richard Wall (Phonetic),   I also received the

11 government's final order of forfeiture which was just submitted

12 to me.

13          Are there any additional -- or, first of all, are

14 there any other materials that have been submitted that I've

15 not just referred to?

16          Mr. Burke?

17          MR. BURKE:  No, Your Honor.

18          THE COURT:  Mr. Zauzmer?

19          MR. ZAUZMER:  No, sir.

20          THE COURT:  Are there any additional materials anyone

21 would like to submit now, Mr. Burke?

22          MR. BURKE:  Your Honor, the only additional material

23 that I'll submit during my presentation is a letter from Sonita

24 Williams and if the Court doesn't mind, I'd like to read that

25 into the record.

1        THE COURT:  Certainly.

2        MR. BURKE:  Thank you.

3        THE COURT:  MR. Zauzmer?

4        MR. ZAUZMER:  No, Your Honor.

5        THE COURT:  Mr. Williams, have you received a revised

6   presentence investigation report?

7        MR. RUFUS SETH WILLIAMS:  I have, Your Honor.

8        THE COURT:  Have you had full and ample opportunity

9   to review it, and have you, in fact, done so?

10       THE DEFENDANT:  Yes, Your Honor.

11       THE COURT:  Mr. Burke, have you reviewed the revised

12  presentence investigation report?

13       MR. BURKE:  I have, Your Honor.

14       THE COURT:  Mr. Zauzmer, have you reviewed the

15  revised presentence investigation report?

16       THE COURT:  Yes, Your Honor.

17       THE COURT:  I have reviewed defendant's objection to

18  the report, he argues that paragraph 28 of the report

19  incorrectly provides that Mr. Williams requested a police

20  escort for Mr. Ali to be provided by Captain Sullivan when Mr.

21  Ali arrived at the Philadelphia airport -- flew into the

22  Philadelphia airport.  And my reading of the record confirms

23  that objection so I will sustain the objection.

24       Does anyone have any other objections to the revised

25  presentence investigation report that he has not previously

6

1  made, but would like to make now?

2           Mr. Burke?

3           MR. BURKE:  No, Your Honor.

4           THE COURT:  Mr. Zauzmer?

5           MR. ZAUZMER:  No, Your Honor.

6           THE COURT:  I will accept and adopt the facts and

7  conclusions as set out in the report for purposes of this

8  sentencing.

9           Accordingly, I conclude that under the guidelines,

10 the advisory guidelines, the offense level is 24, the criminal

11 history category is one, and the advisory guideline sentences

12 between 51 to 63 months imprisonment.  However, there is a

13 statutory maximum penalty of 60 months on Count 1 of the

14 superseding indictment, meaning that the guideline range is

15 between 51 and 60 months imprisonment.

16          Yesterday, I granted the government's motion for an

17 order of forfeiture of the 33,000 -- $33,009, and I believe

18 that was part of the -- actually, it was a much larger amount,

19 but it was part of the guilty plea agreement; is that right,

20 Mr. Burke?

21          MR. BURKE:  Yes, Your Honor.

22          THE COURT:  And the government also requested that I

23 grant its -- grant its motion to substitute assets because one

24 or more of the conditions of 21 U.S.C. 853(p) had been met but

25 didn't indicate what -- how it would satisfy those conditions.

1         Do you object to the substitution request, Mr. Burke?

2         MR. BURKE:  I do not, Your Honor.

3         THE COURT:  Very well.  Then I will grant your

4 request, Mr. Zauzmer, to substitute property in the event as

5 you seem to think there are no assets to satisfy the $33,000

6 forfeiture.

7         MR. ZAUZMER:  Well, if I could address that, Your

8 Honor.

9         THE COURT:  Sure.

10         MR. ZAUZMER:  I think, Your Honor's point recording

11 the fact that there are no substitute assets right now is well

12 taken.  In our form orders that we've submitted throughout the

13 District Court, we include the provision but I think Your Honor

14 was right that it's not necessary at this time.  So that's why

15 once we received your order, and appreciating that order, we

16 prepared this new final order, which is only a money judgment

17 that we're asking for at this time.

18         THE COURT:  Well, you can -- you can move to amend.

19 The statute doesn't give you any limit in terms of --

20         MR. ZAUZMER:  I -- exact -- well, what we really

21 should do is if we identify substitute assets --

22         THE COURT:  Right.

23         MR. ZAUZMER:  -- we will always come back to the

24 Court --

25         THE COURT:  Right.

1    MR. ZAUZMER:   -- under Section 853.  So what we're

2  asking is that the Court now, as part of the judgment, sign the

3  final order of forfeiture.  That will be final as to Mr.

4  Williams.  I don't think there will be any third-party claims,

5  but it's not final as to any third party.

6    THE COURT:  Any objections?

7    MR. BURKE:  No, Your Honor; I've reviewed it.

8    THE COURT:  Very well.  Are there any other issues in

9  dispute, Mr. Burke?

10    MR. BURKE:  I don't think so; no, sir.

11    THE COURT:  Mr. Zauzmer?

12    MR. ZAUZMER:  No, Your Honor.

13    THE COURT:  Mr. Burke, do you have any evidence,

14  remarks, or witnesses you would like to present?

15    MR. BURKE:  May I, Your Honor?

16    THE COURT:  You may.

17    MR. BURKE:  Your Honor, as the Court is aware under

18  Section 3553(a), the Court, obviously, has to consider the

19  nature and circumstances of the crime.  The Court obviously sat

20  in trial for almost two weeks and listened to the evidence, and

21  it was also played out over the many months prior to the

22  trial's beginning.  I ask the Court -- obviously, the Court's

23  going to focus on the nature and circumstances of the crime,

24  but as the Court is aware you also have to look at the history

25  and characteristics of the defendant in formulating in your

1  mind what the appropriate sentence is.  So I ask the Court to

2  take into consideration the following: the Court has

3  appropriately outlined what the guidelines are, at 51 to 63,

4  and they suggest a guideline range, but with a statutory max of

5  60 months.  The Court appropriately and correctly stated that

6  the guidelines are 51 to 60 months.

7         First and foremost, I am aware that the Court -- or I

8  filed with the Court yesterday a multitude of letters and I,

9  knowing the Court's thoroughness, I'm sure the Court has

10  reviewed them thoroughly, sir, and I ask that you make them

11  part of the record.

12         THE COURT:  So ordered.

13         MR. BURKE:  Many of the authors of these letters are

14  present in the courtroom, sir.  Some are not, they could not be

15  here for a variety of reasons.  I would like to turn and ask

16  the audience to stand for any of the supporters of Seth

17  Williams so that you may see who those people are?

18         THE COURT:  Sure.

19         MR. BURKE:  All those here in favor of Seth Williams,

20  will you please rise?

21         Thank you.

22         I do have one additional letter that was submitted to

23  me this morning by Sonita Williams.  May I read it, sir?

24         THE COURT:  You may.

25         MR. BURKE:  Okay.

1    It says, dear, Your Honor, my name is Sonita
2  Williams.  I have known Seth Williams for 23 years.  For 17 of
3  those years I was his wife.  Seth and I have remained close
4  despite our divorce and I am proud to be here to support him
5  today, not just because he is the father of my children, but
6  because he is my friend.  I'm not here to pretend that Seth is
7  a perfect man, but Seth is a good man.  Seth is a family man.
8  He is a man devoted to his community.  For much of his life he
9  has been committed to doing good and helping those less
10  fortunate than himself.
11    That commitment to others led him to become the
12  District Attorney of Philadelphia.  Unfortunately, Seth is also
13  a flawed man and his flaws led him to make flawed decisions
14  and, ultimately, has led all of us to being here today.  Your
15  Honor, you have heard many of the good things Seth has done for
16  his family, friends, and the community at large.  I ask that
17  you consider those things, along with the charges against him,
18  as you sentence him today.  I ask that you also consider the
19  remorse that Seth feels for his actions that have brought us
20  here and know that he truly wants to be a better man.
21    Seth has lost everything, the career he has worked so
22  hard for, the respect of his colleagues and friends, and his
23  very freedom.  Being away from his children and his elderly
24  mother has been extremely difficult for all of them.  I am
25  asking that as you impose sentence today, you consider the

11

1   whole of Seth's life, good and bad.  Consider the man who has
2   done much good for many, the man who has love -- who loves and
3   is loved by family and friends, and the man who has the
4   capacity and willingness to live better -- a better life, and
5   be even a -- and be an even better man.
6          I am hopeful that you -- as you impose sentence, Seth
7   will be allowed to remain close to his mother and children so
8   that they may be allowed to continue their close bond with him.
9   His mother Imelda is 85 years old and has not seen him since
10  June 29th, 2017.  His daughters, Taylor and Hope, have only
11  been allowed four visits since that time.  I ask that you
12  consider them and how your sentence will affect them.
13         Thank you for your consideration, sincerely, Sonita
14  Williams.
15         As I was stating to the Court, the Court needs to
16  focus on the history and characteristics of the defendant.  And
17  in imposing the appropriate sentence, I'd ask the Court to
18  consider the following.  I'd asked the Court to consider the
19  thousands of lives that Mr. Williams changed not just as the
20  District Attorney and the crime victims that he -- he
21  represented, but the many years of service he had in the
22  District Attorney's office as an assistant district attorney.
23  I know the Court's history, the Court can appreciate as an
24  assistant district attorney the long hours, the low pay, and
25  the heavy caseload.  No one does it for the glory, they do it

12

1   for the good of the job, so when imposing a sentence and

2   determining or considering his nature -- his nature and

3   characteristics, I ask you to consider the many years he served

4   as an assistant district attorney in the city of Philadelphia.

5            I'd ask you to also look at, notwithstanding the fact

6   that the crime for which he stands -- stands convicted of

7   occurred while he was the District Attorney of Philadelphia

8   County, I ask you to look at the great strides that he made to

9   improve the office, including changing the office from a

10  horizontal base to a vertical base prosecution.  As the Court

11  is aware there was great effort for Mr. Williams and his office

12  to convince the criminal justice system in the First Judicial

13  District to change the way that the prosecution teams in the

14  courtrooms were set up.  Mr. Williams was able to implement a

15  vertical prosecution, enabling assigning prosecutors to a

16  particular neighborhood so that those prosecutors knew the

17  police better, knew the crime trends, and could better

18  effectuate criminal prosecutions in those various

19  neighborhoods, enabling what all prosecutors want is safer

20  streets for the community.  So that was a great achievement and

21  I ask the Court to consider that.

22           I ask the Court to consider the many programs he

23  implemented for low-level offenders, by creating more

24  diversionary programs for low-level offenders.  It certainly

25  freed up more money for the District Attorney's office to go

13

after larger and more serious crimes.  But it also -- it
enabled first-time offenders to pay their debt to society and
still maintain a clean record.  I think in the criminal justice
system all the participants, the lawyers, the judges,
probation officers, police officers, agents, understand that
individuals with criminal records find it difficult moving
forward in society.  Mr. Williams certainly recognized that and
expanded those programs, AMP 1 and AMP 2 and the SAM program.

Some individuals, obviously, couldn't qualify for
that, Your Honor, so he expanded the programs because these
individuals may have already had criminal records that were the
low-level nature, but he expanded some of these programs to
attempt to get these individuals some sort of education so
notwithstanding their criminal conviction they could still move
forward in a positive way.

I ask the Court to take into consideration that under
Seth Williams, the discharge rate of felony arrests at the
preliminary hearing drastically dropped, primarily due to his
implementation of the vertical prosecution system.  I ask the
Court to also take into consideration that under Mr. Williams's
leadership at the District Attorney's office the request for
death penalty notices in capital cases was greatly reduced.  I
asked the Court to take that into consideration.

I also ask the Court to take into consideration his
nearly 20 year service in the military, beginning in the Army

14

1   Reserves in 1998 and the Judge Advocate General where he
2   attained the rank of Major.  He has served for the Pennsylvania
3   National Guard since 2015.  I ask the Court to take that into
4   consideration in considering the appropriate sentence.

5          I ask the Court to take into consideration, his
6   dedication to his faith, the many years of service he had to
7   St. Carthage in West Philadelphia.  And the archdiocese as a
8   member of the parish council and the Catholic Church's Cluster
9   Council.  The parish council as the Court knows, Mr. Williams
10  and others in the community of the parish are charged with
11  running the parish outside of the theology.  Mr. Williams's
12  work led to his placement on the arch -- on Catholic Church's
13  Cluster Council with which also -- which oftentimes had to deal
14  with the painful job of downsizing or closing parishes and then
15  unify them in another parish due to the shrinking population of
16  Catholics.  So I'd ask the Court to take into consideration his
17  long service to the Catholic Church.

18         I also ask you to take into consideration the courage
19  Mr. Williams showed in as a Catholic taking on the Catholic
20  Church and uncovering years of abuse by pedophile priests.  The
21  investigations here in Philadelphia became a model for other
22  DA's offices in other dioceses throughout the country.  I ask
23  you to take into consideration his 20 years of service in the
24  Overbrook Civic Association where he volunteered his time in
25  neighborhood beautification, trash removal, zoning issues, and

1  organized sports.  Mr. Williams, himself, was a coach for many,
2  many years for his daughters and other boys and girls in the
3  neighborhood as they progressed through the sports program.

4         I ask you to take into consideration his very strong
5  family ties, particularly his mother, his former wife and his
6  two teenage daughters.  Although divorced, Mr. Williams and his
7  former wife, Sonita, are both primary parents and Mr. Williams
8  was fully invested in all aspects of their lives.  I also ask
9  you to take into consideration when formulating the appropriate
10 sentence for the defendant, I ask the Court to take into
11 consideration some of the ancillary punishments that Mr.
12 Williams will or has suffered.  Mr. Williams was suspended from
13 the Pennsylvania Bar as of last week.  He was disbarred.  Mr.
14 Williams will not be able to practice law upon his -- from
15 release for however long the -- the Court determines the
16 appropriate sentence.  So he is not going to be able to obtain
17 employment for himself, and obviously for the restitution that
18 he needs to pay, in his chosen profession.

19        He has also lost his sizable pension.  As Mr.
20 Williams is now in his fifties, as I am, your thoughts start to
21 change in terms of how you're going to support yourself in your
22 -- as you are winding down your career, I ask you to take that
23 into consideration, he is going to have to start from scratch.
24 And when he is released he is going to be virtually penniless,
25 so I ask the Court to just consider that in what the Court

16

1  deems to be an appropriate sentence.

2          The only other request I have of the Court is that

3  the Court balance not only the nature and circumstances of the

4  crime but the history and characteristics of the defendant.  I

5  do ask that the Court -- if the Court would consider releasing

6  Mr. --

7          THE COURT:  We're not there yet.

8          MR. BURKE:  Yes, sir.  We'll do that at the end?

9          THE COURT:  Yes.

10          MR. BURKE:  Your Honor, I have -- I'm going to read

11  an allocution from my client, may I wait to the end or do you

12  want me to do that now?

13          THE COURT:  I was going to call on your client right

14  now --

15          MR. BURKE:  Okay.

16          THE COURT:  Mr. Williams, you have the right to

17  allocution, that means you have the right to speak to me on

18  your own behalf and you may do so now if you choose to exercise

19  that right.

20          MR. BURKE:  I'm going to read a prepared statement

21  from Mr. Williams if that's all right with the Court?

22          THE COURT:  It certainly is.

23          MR. BURKE:  Thank you, sir.

24          MR. ZAUZMER:  Your Honor, I would ask that Mr.

25  Williams confirm that on the record --

1    MR. BURKE:  Oh.

2    MR. ZAUZMER:  -- that he doesn't wish to personally

3  address the Court.

4    THE DEFENDANT:  If it please the Court, good

5  afternoon, Your Honor.  It is my wish to have Mr. Burke read

6  into the record my statement.

7    THE COURT:  Very well.

8    THE DEFENDANT:  Thank you, Your Honor.

9    MR. BURKE:  May I, Your Honor?

10    THE COURT:  Yes.

11    MR. BURKE:  Good afternoon, and if it please the

12  Court, Your Honor, prosecutors, federal agents, members of the

13  media, friends and family.  I have made mistakes, mistakes of

14  character and judgment.  These are my mistakes and my mistakes

15  alone.  I am truly sorry for that, for the embarrassment

16  brought to my family, friends, the institutions I love, and for

17  failing the people of Philadelphia who put their trust in me.

18    I want to thank my attorneys, Thomas Burke, Trevan

19  Borum and John Hanamirian for their sacrifice, skillful

20  advocacy and friendship.  I also want to thank all of the

21  wonderful people that sent letters to the Court on my behalf

22  and those that -- and those that are here to support me today.

23  Your support has given me hope and I am extremely grateful.

24    Your Honor, I have spent my entire life trying to

25  serve my church, my community, and my nation.  I owe everything

18

1  to my parents Rufus and Imelda Williams.  Their -- they

2  sacrificed for me, instilled all of the right values and by

3  their lives demonstrated to all what it meant to live, love,

4  laugh, and to serve others.  I am proud of all of my

5  accomplishments and I give my parents and God the glory.  I

6  apologize to them for my failures and for letting them down.

7  My success and achievements were theirs.  My errors were my

8  own.  My father always told me, unless you are willing to be a

9  part of the solution, you forfeit your right to complain.  So I

10  tried to help find solutions that I thought would live up to my

11  parents' example at each phase of my life.

12        Your Honor, I owe a huge apology to the people of

13  Philadelphia, serving as District Attorney for the city I love

14  and becoming the first African American DA in the history of

15  Philadelphia was a privilege of my life.  But rather than

16  holding myself to a higher standard, I squandered that trust

17  placed in me.  I am truly sorry.  After serving as an ADA for

18  ten and a half years, I wanted to be the DA to help find

19  solutions and hopefully make the office and the criminal

20  justice system better.

21        It was my goal to be a good steward of the office and

22  to try to -- and to turn over my successor -- to turn it over

23  to my successor better than when I took the oath of office in

24  January of 2010.  I'm extremely proud of that.  We achieved the

25  DA's office working in collaboration with the community,

1  police, courts and clergy, to expand diversionary programs,

2  community-based prosecutions, GunStat, and focused deterrence.

3       I loved serving as DA.  The public policy changes,

4  community events, walking in the neighborhoods and hearing the

5  concerns of neighbors, visiting hospitals, speaking at schools,

6  I would not have been able to do any of these things without

7  the hard work of the people that got me elected, volunteers and

8  campaign candidates.  They believed in me and my vision to be

9  the District Attorney.  I have failed them.

10      To Kelley Hodge and all of them men and women, past

11 and present that work at the Philadelphia District Attorney's

12 Office, I offer you my sincerest and humble apology for the

13 shame I brought to the office that I love.

14      Your Honor, I have spent my adult life trying to

15 provide for my daughters, Alyssia, Taylor, and Hope.  I hope to

16 create -- I hoped to create a legacy that would open doors for

17 them.  I love them dearly, they have stood me during this my

18 darkest hour, and I am grateful.  I must publicly apologize to

19 them for the embarrassment, suffering, and trauma that my

20 actions have caused them.

21      Your Honor, with your permission I will take the

22 opportunity to publically apologize to the two women that I

23 have loved the most in my life and whom I have hurt the most.

24 My sins, my selfishness, my immaturity, my bad judgment, and

25 self-destructive behavior has hurt both of them deeply and it

1 was unnecessary.  It has caused them great pain and public

2 humiliation.  So to Stacey and Sonita I offer my most sincerest

3 and heartfelt contrition.  I beg their forgiveness.

4        I must also apologize to the friends, loved ones, and

5 all the members of the Crodupp (Phonetic), Cummings and

6 Williams' family.  Sonita and Stacey deserve better from me at

7 all times and I let them down.  I am forever indebted to them

8 and will spend the rest of my life working to fix all that I

9 have broken and to regain their trust.  I know words are cheap,

10 I ask that they allow my actions to speak for me from this day

11 forward.

12        Your Honor, on the morning of June 29th I accepted

13 the responsibility for what I have done.  As a result, I lost

14 my job, reputation, pension, house, law license, and liberty.

15 I have tried to use this experience and time to learn to grow

16 from my mistakes and to atone for my sins.  I believe that all

17 of this had to occur and as it is an essential step, the price

18 I had to pay, to complete the shedding of my old life and to be

19 free to live -- and for me to be free to live a new life.

20        In closing I'm a man of faith and it has been my

21 faith that has carried me this far.  It is also because of my

22 faith that I know that rehabilitation, reconciliation, second

23 chances and forgiveness, are all possible.  When I am released

24 I will still be a relatively young man and I will have the

25 opportunity to prove to my family, my daughters, and my

21

1  community that my mistakes were just that, mistakes, and that I

2  can be more than I have been and that the mistakes will not

3  define me.

4           That's the statement from my client, Your Honor.

5           THE COURT:  Anything you want to add, Mr. Williams?

6           THE DEFENDANT:  No thank you, Your Honor.

7           MR. BURKE:  That's all.  I only have the final

8  requests, sir.

9           THE COURT:  Very well.

10          Mr. Zauzmer?

11          MR. ZAUZMER:  Thank you, Your Honor.  Your Honor, as

12  the Court is aware the government requests that the Court

13  impose a sentence of 60 months imprisonment, which is within

14  the guideline range.  It's also the statutory maximum for this

15  offense.  I'm going to just briefly respond to Mr. Burke's

16  suggestion that the Court consider Mr. Williams' public

17  service.  That's something that we strongly disagree with.  The

18  public office and whatever benefits that come with that do not

19  give anybody the license to commit a crime, and certainly do

20  not give anybody the ability to earn a lower penalty that some

21  other citizen who did not engage in public service.

22          There are dozens of people in this courtroom right

23  now who are public servants, a federal judge, a probation

24  officer, pretrial services court staff, law enforcement agents,

25  United States marshals, and none of these people here are

22

1  thinking, oh, I want to go commit a crime because I'll then get
2  a benefit for the good public service that I've provided.
3  That's really antithetical to the way our democracy is
4  established.
5       Mr. Williams can get credit in the public forum for
6  the things he did in the DA's office but that's not why we're
7  here today.  We're here today because of the crimes he
8  committed using that office in order to commit those crimes and
9  that's what has to be punished.  And I think Mr. Williams
10  pretty much recognized that in his allocution statement when he
11  appropriately apologized to the people in the District
12  Attorney's office.  Whatever good programs or things he did
13  while he was there, this case had a devastating effect on the
14  District Attorney's office.
15       There are hundreds of assistant DAs and other law
16  enforcement agents who go to work every day and do a very tough
17  job for a lot less money than Mr. Williams was paid to
18  prosecute the many crimes that are committed in this city.  And
19  to have the elected District Attorney be exposed as someone who
20  was selling his office for favors, who was committing other
21  frauds, has a devastating effect on them, and on their pursuit
22  of justice that they're trying to accomplish every day.  That's
23  what we should be focused on today and not giving any benefit
24  for the public service that he was compensated for and that he
25  swore himself to do.

23

1          Now, there are positive attributes.  We're not here

2   to say that Mr. Williams is an entirely bad person.  I read the

3   very thoughtful, thorough letters, the character letters that

4   were presented by his friends and family.  There's no doubt

5   that Mr. Williams is a loving father, he's a devoted member of

6   his church, he has engaged in other community activities

7   outside of his elected paid position and what that warrants --

8   in our view what it warranted, is that the government is not

9   seeking an upward variance in this case.  The government did

10  not have to agree, of course, to this plea agreement to

11  sentence at 60 months.  We did it because we looked at the

12  circumstances and they're really no different now than we

13  perceived them back in June.

14         We looked at the circumstances and we saw that these

15  crimes were serious, that the guidelines for a serious sentence

16  in the range of 51 to 63 months and that because of the other

17  positive attributes of his life, we were not going to seek an

18  upward variance, which of course is our normal position.  As

19  Your Honor knows we ordinarily recommend within guideline

20  sentences and so we were pleased to take a plea that permits us

21  to ask for the appropriate within guideline sentence.  That 60-

22  month sentence is significant and it's appropriate.

23         We have crimes here involving taking bribes,

24  committing a fraud on a nursing home, committing a fraud on the

25  city and on the HIDTA program by taking vehicles for his

1  personal use.  Not once, not twice, but every single day for

2  five or six years, using these vehicles as his own.  And, of

3  course, the PAC fraud as well, using the money of campaign

4  contributors to live a more lavish lifestyle for the meals and

5  the gym expenses and the $3,000 private birthday party and

6  everything else.

7         That all speaks volumes about Mr. Williams' character

8  as well, that he was one who just would -- basically took

9  whatever opportunity came his way over a long period of time.

10 These were not impetuous crimes of a young person.  These were

11 the crimes of a man in his forties, who was the chief law

12 enforcement officer of this city.  And that, of course,

13 requires a significant penalty.  One of the things I saw in the

14 character letters, I disagree with.  I don't have to name the

15 person but one respected gentleman wrote -- he said, I don't

16 believe he is a bad person nor a person I would characterize as

17 a criminal.  I view him as a man of faith who has made a

18 mistake in his life and has realized what those mistakes were,

19 and is trying to get his life back together.  So with that, I

20 respectfully disagree.  He is a criminal and he was a criminal

21 over a long period of time.  We're not talking about a, quote,

22 mistake.  We're talking about a years' long dereliction of his

23 responsibility to others.

24         This person in his letter -- this was someone from

25 his -- his JAG background in the Army.  This person also

1   suggested that Mr. Williams would have been better served if --

2           THE COURT:   I'm just looking at the letter, I'm

3   sorry.

4           MR. ZAUZMER:   That's fine, and I don't want to

5   interrupt.

6           THE COURT:   No, go ahead.

7           MR. ZAUZMER:   And I know you've studied the letters

8   as closely as I did.   The -- this person suggested that he

9   would have been better served by a board of ethics advisors.

10  The fact of the matter is not just public officials but

11  ordinary citizens do not need an ethics advisor to know that

12  you cannot take a bribe.   They don't need an ethics advisor to

13  know that you don't take cars from your employer and use it as

14  your personal vehicle for years on end.   And certainly not cars

15  that belong to the HIDTA program that are supposed to be used

16  in the most sensitive and important drug investigations.   That

17  you don't use campaign contributions for these lavish meals and

18  deep tissue massages and all the other things that were listed

19  at trial.   And you certainly don't take money from a nursing

20  home or from the friends of your mother who are trying to

21  support your mother and help her with her expenses.

22          What ordinary citizens know is that if you're

23  fortunate enough, as Mr. Williams was, to earn $200,000 a year

24  or more that that, and even much less than that, certainly

25  permits you to live a comfortable life, to care for your

1   family, to support your family and your needs.  And it wasn't

2   good enough for Mr. Williams.  He just wanted more and that's

3   where we get these serial offenses that we needed to lay out

4   before Your Honor and the jury in June.

5          And then the final point, of course, is that Mr.

6   Williams is not an ordinary citizen.  He was the elected chief

7   law enforcement officer of this city and county, one of the

8   largest metropolitan areas in the United States.  There needs

9   to be a significant sentence for retribution, for deterrence --

10  both for specific deterrence as to Mr. Williams, and for

11  general deterrence.  As Your Honor knows just looking at the

12  courtroom behind me, this sentence is not issued in secret.

13  This will be well known throughout this area within moments of

14  the time the sentence is imposed and it should be made clear to

15  these citizens and to the elected officials of this area, that

16  this type of conduct that we saw here is simply not tolerable.

17         Thank you very much, Your Honor.

18         THE COURT:  Thank you.  In reviewing the presentence

19  investigation report, I have considered the guideline range

20  sentence in the report as just one of several factors,

21  including the following:  The nature and circumstances of the

22  offenses -- or of the offense and the history and

23  characteristics of the defendant.  The defendant, as I

24  indicated before, pled guilty to one count and admitted the

25  other twenty-eight.  Mr. Williams served as the District

27

1   Attorney of Philadelphia from November 3rd, 2009 through June
2   29th, 2017.  During that tenure he engaged in five separate
3   criminal schemes, including bribery, defrauding a nursing home,
4   defrauding his political action committee, and misuse of City
5   vehicles.

6           As a result of these schemes, the defendant owes in
7   excess of $58,000 in restitution.  As to Count 1 during
8   February 2012, Mr. Williams agreed to perform official acts for
9   a Bucks County resident in exchange for personal gifts,
10  including a sofa and a trip to the Dominican Republic.  That
11  rather clinical description of the defendant's crimes doesn't
12  really do them justice.  The -- Ms. Widmeier's presentence
13  report indicates, and there's been no objection to this, that
14  during the time he served as District Attorney, the defendant
15  earned between 170 and $200,000 a year.  That was not
16  sufficient to fund what could be called an extravagant
17  lifestyle that he craved.

18          The bribery -- the two bribery schemes demonstrated
19  quite clearly and the defendant admitted that he traded
20  official acts and promises for gifts, including cash.  In
21  defrauding the nursing home, the facts underlying that show
22  that the defendant stole some $23,000 that was intended to pay
23  for his mother's care.  He signed innumerable documents
24  indicating providing quite plainly that he was the person
25  responsible for her care, he was the responsible person, he had

1  control of her finances as a result, and as I believe it was

2  the director of the nursing home and Archdiocese and nursing

3  home, I might add, the defendant dumped her like a sack of

4  potatoes, or he washed his hands of her, whichever metaphor you

5  want to use. And feigned great ignorance of his obligation,

6  well, no, no, it's the nursing home. It's the nursing home

7  that has to pay for her care. I have to be a high roller at

8  various restaurants in town. I have to be able to entertain my

9  friends. I'm not going to care for my mother. I'm going to

10  take that $23,000.

11  He defrauded his own PAC. People who thought they

12  were contributing to his political campaign were paying his

13  dues and bills at the Union League and at the Sporting Club.

14  Why would anyone ever want to contribute to a political

15  campaign again when the highest law enforcement officer of this

16  city is eating with his face out of his own political action

17  committee. And as Mr. Zauzmer described his misuse of City

18  vehicles to the point where a lieutenant of county detectives

19  who is probably twice as tall as I am, sat up there on the

20  stand trembling that he was testifying against his boss, trying

21  to describe how he wanted to say that the defendant was using a

22  HIDTA car, in effect, to go to the shore, but simply was

23  terrified to do it.

24  Mr. Williams lived in an orphanage and foster homes

25  before he was adopted at the age of 18 months. He is

1  approximately 50 or 51 years old, has three daughters, two of
2  whom are dependent.  His mother resides in a nursing home and
3  suffers from Parkinson's disease, diabetes, congestive heart
4  failure and kidney disease.  The defendant has no criminal
5  history.

6          I have considered the need for the sentence imposed
7  to reflect the seriousness of the offenses, to promote respect
8  for the law, to provide just punishment, to afford adequate
9  deterrence to criminal conduct, and to protect the public from
10 any crimes -- further crimes this defendant might commit.
11 There has been -- I've lived in this town since 1974 and the
12 history of this town suggests to me that all too many public
13 officials equate elective or political office, as they view it
14 being synonymous with corruption and a license to be corrupt.
15 Almost from the time you took office, Mr. Williams, you sold
16 yourself to the parasites you surrounded yourself with, Mr.
17 Ali, Mr. Williams.  In the case of Mr. Ali you suggested you
18 would fix a case for him.  You were unable to do that but that
19 was the plain import of what you said.

20          You corrupted the electoral process by stealing or
21 converting money from your own -- your own PAC.  You
22 effectively stole money from your mother.  You humiliated the
23 men and women of the District Attorney's office, you impaired
24 the criminal justice system, a district attorney who wasn't
25 licensed to practice law, and you harmed all the citizens of

1  this city. Your profound dishonesty has -- your own profound

2  dishonesty, in my view, has to be deterred, and other public

3  officials have to know that there may well be a day of

4  reckoning if they engage in corrupt conduct as you have.

5        I have considered the need to provide the defendant

6  with educational and vocational training and medical care. The

7  defendant was expelled from West Point in 1986 but later

8  graduated from Pennsylvania State University and Georgetown

9  University Law School. In addition to serving as

10 Philadelphia's District Attorney, he was the Inspector General

11 of the City and an assistant district attorney in the city,

12 that he served as an internal investigator for the Stradley

13 Ronon firm, and as a litigator in the Zarwin Baum firm.

14        Last week he was disbarred from the Pennsylvania bar.

15 He has no history of mental illness or need for drug treatment

16 or substance abuse treatment. Once it appears he began to get

17 himself into trouble, he did attend therapy sessions. I have

18 considered the need to avoid sentencing disparities and the

19 need to provide restitution to victims. I will impose a

20 restitution -- a -- I will issue a restitution issue in the

21 amount of $58,422.83, which is the amount that probation has

22 recommended and has not been objected to.

23        I have considered everything submitted to me by both

24 parties. I have considered everything in the defendant's

25 brief, which Mr. Burke largely repeated here in court. His

brief discusses the support of his family and friends, the

defendant's accomplishments as DA, the -- his military service,

that he has suffered great public shame, the loss of his law

license, and ancillary penalties such as the loss of his

pension.

I have considered everything Mr. Burke said to me in

court, the history and characteristics of his client, the

letters that have been submitted in Mr. Burke's view confirm

the defendant's good character, that the defendant has done

good things, that he has expressed remorse, that I should look

at the defendant's whole life, that I should consider the

effect a prison sentence on defendant's family.  The thousands

of lives defendant changed not just as district attorney but as

an assistant district attorney, the many improvements in the

administration of the DA's office he worked, his 20 years of

military service, his dedication to his faith, his courage in

investigating the Catholic church, the 20 years he participated

in the Overbrook Civic Association, his family ties, and,

again, the ancillary punishment that he has suffered, including

disbarment and loss of his pension.

I have considered the statement that the defendant

chose not to make himself but to have read by his counsel, his

statement of remorse, which like his testimony at his detention

hearing, I simply do not find credible.  Sir, much of your

allocution to me sounded like a campaign speech.  I find it

1  interesting that you say you owe everything to your parents in
2  your allocution statement.  Evidently, you didn't feel that you
3  owed them honesty because you stole, in effect, from your
4  mother.  I deem the sentencing recommendation and the
5  presentence report as advisory.  I've made sufficient findings
6  to fashion and impose a sentence.

7      We come now to the sentencing.  I'm going to state
8  the sentence that I intend to impose, then I will ask counsel
9  whether there are any objections with respect to the accuracy
10 or the regularity of the sentence.  If there are objections, I
11 will deal with them.  If there are no objections, then I will
12 impose sentence.  So right now I am not imposing sentence, I'm
13 simply stating the sentence I intend to impose.

14     Mr. Williams, I intend to impose the following
15 sentence:  You will serve a term of 60 months incarcerations on
16 Count 1 of the superseding indictment.  After you are released
17 from prison, you will participate in the supervised release
18 program of this Court for three additional years on Count 1.
19 Upon release you are to observe the standard conditions of
20 supervision.  I will not impose a fine because I find you do
21 not have the ability to pay fine and restitution and
22 forfeiture.  You shall pay restitution in the amount of
23 $58,422.83 plus interest.  You shall also pay a special
24 assessment of $100.  I will enter the government's final order
25 of forfeiture in the amount of $33,009.

1    Mr. Burke, do you know of any reason why the sentence

2 that I've just stated should not be imposed?

3    MR. BURKE:  No, Your Honor.

4    THE COURT:  Mr. Zauzmer?

5    MR. ZAUZMER:  No, Your Honor.

6    THE COURT:  Ms. Widmeier?

7    MS. WIDMEIER:  No, Your Honor.

8    THE COURT:  Mr. Williams, it is the judgment of this

9 Court that you, Rufus Seth Williams, will be committed to the

10 custody of the Bureau of Prisons to be imprisoned for a term of

11 60 months on Count 1 of the superseding indictment.  After you

12 are released from prison, you will participate in the

13 supervised release program of this Court for three additional

14 years on Count 1.  Within 72 hours of release from the custody

15 of the Bureau of Prisons you shall report in person to the

16 probation office in the district to which you are released.

17    During your period of supervision, you shall not

18 commit another federal, state, or local crime.  You shall be

19 prohibited from possessing a firearm or other dangerous device.

20 You shall not possess any illegal, controlled substance, and

21 shall comply with the other standard conditions of supervision

22 in this court.  You must submit to one drug test within 15 days

23 of commencement of supervision, and at least two thereafter as

24 determined by probation.

25    In addition you will comply with the following

34

1  special conditions.  You shall cooperate with your probation
2  officer in the investigation of your financial dealings and
3  provide truthful monthly statements of your income.  You shall
4  also provide your tax returns upon request.  You are prohibited
5  from incurring any new credit charges or opening additional
6  lines of credit without the approval of the probation
7  department, unless you are in compliance with a payment
8  schedule for your restitution obligation.

9       You shall not encumber or liquidate interest in any
10  assets unless it is in direct service of your restitution
11  obligation or otherwise has the express approval of the Court.
12  You shall cooperate in the collection of DNA as determined --
13  as directed by probation.  I will waive the imposition of a
14  fine because I find you do not have the ability to pay a fine
15  as well as restitution.  And forfeiture, I will make the
16  government's proposed final order of forfeiture part of the J&C
17  in this case.

18       You shall make restitution in the amount of
19  $58,422.83.  Payment should be made payable to the Clerk U.S.
20  District Court for distribution of St. Francis Center for
21  Rehabilitation & Healthcare in the amount of $12,449.74, care
22  of Christine (Phonetic) Ladenburger, 1412 Landsdowne, Darby, PA
23  19023.  Luther and Sylvia Randolph, $10,000.  They reside at
24  3900 Ford Road, Unit 9A, Philadelphia, PA 19132.  Frank
25  Breslin, Revenue Commissioner, City of Philadelphia, 1401 JFK

1  Boulevard, Room 630, Philadelphia, PA 19102, in the amount of

2  $5,078.13.  Department of Health and Human Services, HHS

3  Program Support Center, P.O. Box 530231, Atlanta, GA 30353-

4  20231, in the amount of $15,234.37.

5          After -- in the event that restitution is made to

6  those people and entities, the remaining restitution shall then

7  be paid to the U.S. Department of Justice, Crime Victims Fund,

8  in the amount of $15,660.59.  I believe this is consistent with

9  the letter you sent me, Mr. Zauzmer, that the defendant's PAC

10 director has agreed to -- that the restitution should, in fact,

11 be paid to the Justice Fund.

12         MR. ZAUZMER:  It is.  The fund is actually held by

13 the Treasury Department, the Crime Victims Fund.  And the other

14 -- the only other thing that was on the first payments to the

15 other victims that Your Honor said, will be paid before the

16 Crime Victims Fund.

17         THE COURT:  Yes, I just said that.

18         MR. ZAUZMER:  Right.  I would just add that it will

19 be pro rata as payments are made.

20         THE COURT:  Okay.  That's fine.

21         MR. ZAUZMER:  Thank you.

22         THE COURT:  The restitution is due immediately.  It

23 is recommended that the defendant participate in the Bureau of

24 Prisons Inmate Financial Responsibility Program and provide a

25 minimum payment of $25 a quarter towards restitution.  In the

36

1    event the entire restitution is not paid before the

2    commencement of supervision, payment of supervision shall

3    become a condition of supervision -- I'm sorry payment of

4    restitution shall become a condition of supervision and shall

5    be paid at the rate of at least $200 a month to commence 30

6    days after release from confinement.  You shall notify the

7    United States Attorney for -- I guess it's the district of New

8    Jersey and not this district.  Is that right?

9            MR. ZAUZMER:  Well, I would --

10           THE COURT:  Who would be supervising the defendant's

11   supervision, this office or the New Jersey U.S. Attorney's

12   Office.

13           MR. ZAUZMER:  I think it will be the New Jersey

14   office, Your Honor.

15           THE COURT:  Very well.  You shall notify the United

16   States Attorney for the district of New Jersey within 30 days

17   of any change of mailing address or residence that occurs while

18   any portion of the restitution remains unpaid.  If the

19   restitution is not paid in full 15 days from today, I will

20   impose interest on the restitution.  The interest will begin to

21   accrue on November 8th, 2017.  The interest will be completed

22   at a rate equal to the weekly average one year constant

23   maturity treasury yield as published by the Board of Governor's

24   of the Federal Reserve System for the calendar week preceding

25   the first day on which the defendant is liable for interest,

37

1  and you shall pay a special assessment of $100 which shall be

2  due immediately.  As I indicated before I will make the

3  government's final order of forfeiture a part of the judgment

4  and commitment order of this case, so I believe that's a

5  forfeiture of $33,009, is that right?

6          MR. ZAUZMER:  That's correct, Your Honor.

7          THE COURT:  You have heard me state that you are to

8  observe the standard conditions of supervision in this court.

9  Probation will go over each and every one of those conditions

10  with you.  However, I want to emphasize one thing and it is

11  that you, Mr. Williams, not possess any firearms or dangerous

12  weapons.  Being a convicted felon it would be illegal for you

13  to possess any firearms or dangerous weapons.  There being no

14  objections or further submission, I order that the sentence be

15  imposed as I have just stated it to be.

16          Mr. Williams, I have now formally imposed sentence

17  and you have now for there -- and, therefore, now been

18  sentenced.  The criminal process from the Court's standpoint is

19  over, but from your standpoint it is not over.

20          As you know, you have many obligations as a result of

21  this sentence.  Mr. Williams, I advise you that you have the

22  right to appeal, including the right to appeal the sentence

23  that I just imposed on you.  You have 14 days in which to

24  appeal.  Your right to appeal might be affected by the terms of

25  your guilty plea agreement.  I also advise you that if you are

1   unable to pay the cost of an appeal that you may apply for

2   leave to appeal in forma pauperis and if that leave is granted

3   for you to appeal in forma pauperis, then there won't be any

4   costs that would be imposed on you to take such an appeal.

5          If you so request, the Clerk of Court shall prepare

6   and immediately file a notice of appeal on your behalf.  Now,

7   Mr. Williams you understand what I've just said with respect to

8   your ability to appeal?

9          THE DEFENDANT:  I do.

10         THE COURT:  The next thing I would like to address is

11  execution of sentence.  I am prepared to order that Mr.

12  Williams begin serving his sentence immediately, unless counsel

13  has any reason for delay.

14         Mr. Burke?

15         MR. BURKE:  May I address the Court?

16         THE COURT:  Sure.

17         MR. BURKE:  Your Honor, I would ask that the Court --

18  as the Court -- the Court took my client in custody on the day

19  of the plea but because of the nature of who it is, at the

20  Federal Detention Center he is not mixed in with the general

21  population.  He is in the segregated housing unit.  He is in a

22  cell by himself all day, except for one hour, he gets out to go

23  to a cage on the roof.  He gets clothes three days a week.  He

24  can only make one phone call -- one phone call a month as

25  opposed to the other defendants downstairs, they can call

1 whenever they want.  This has caused a great strain on his

2 relationship with his two teenage daughters and, you know, we

3 have spoke to Mrs. Williams.  Not saying what the Court said

4 and appropriately pointed out, the crimes against his mother,

5 his mother is in declining health, you know she is 85 years

6 old.  She certainly wants to see her son.  The -- you know, the

7 prospect that she would be able to survive 40 to 45 months of a

8 sentence is unknown, but certainly at 85 years old with the

9 physical ailments that the Court has noted on the record, I

10 would respectfully request that the Court would reconsider the

11 decision of January -- or of June 29th, release him on house

12 arrest so that his mother can see him and that he can spend

13 some time with his daughters before being classified.

14         One of the fears here is -- is -- and I have spoken

15 to Joyce Hiracala (Phonetic) who is the regional director's

16 counsel for classification and movement.  Because of who he is,

17 there is a distinct likelihood that he will not be allowed to

18 serve his sentence in the Eastern District of Pennsylvania or

19 in the District of New Jersey and could very well wind up

20 serving a sentence several states away, making it incredibly

21 difficult for his girls to come and visit him, and practically

22 impossible for his mother to come and see him.  In light of

23 that, I would ask that the Court, very respectfully if you

24 would reconsider your position, release him on house arrest to

25 his former wife's address, pending classification so that his

40

1 mother can see him.

2          I know the Court is very angry with my client and the
3 Court has every grounds to be so.  I would ask that you do this
4 on behalf of his mother.  The government has -- I spoke with
5 Mr. Zauzmer and I appreciate the position of Mr. Zauzmer and
6 Mr. Moran, and Mr. Gauri, and the government.  They take no
7 position either way and I appreciate their courtesy in that
8 regard.

9          THE COURT:  It's interesting, Mr. Burke, because in
10 your sentencing memorandum you talked in asking me to -- in
11 effect to reconsider my June 29th decision.  You talked at
12 great length about the defendant's desire to see his mother,
13 and you mentioned the other things only at the end rather
14 briefly.  Being the good lawyer that you are, and having heard
15 what I've said today, you've tried to upend the order of that.
16 When I read your request that the defendant be allowed to self
17 surrender so he could visit his mother, I thought to myself,
18 the English language doesn't have the word to capture the
19 outrageousness of that request, whether it's gaul, or hubris,
20 brass, audacity.  The defendant stole from his mother and now
21 wants to visit her.

22          The -- my consideration of your client as a flight
23 risk has not changed since June 29th.  Your request is denied.

24          MR. BURKE:  May I --

25          THE COURT:  The defendant will remain in custody.

1          MR. BURKE:  Just for the --

2          THE COURT:  As for where he is designated, I

3    recommend that the Bureau of Prisons designate him as close to

4    this district as possible, consistent with their security

5    concerns, which is exactly what Ms. Widmeier told me they would

6    do.

7          Yes, Mr. Burke?

8          MR. BURKE:  Your Honor, it wasn't so he could visit

9    his mother, so his mother could see him.  That was my request.

10   So the hubris was not for my client.  There is no hubris on

11   behalf of Mr. Williams; she wants to see him.

12         THE COURT:  If you care to read your pleading that

13   way, that's fine with me.  That's certainly what you said here

14   in court.  In any event, I am not changing my order.

15         Is there anything else we need to discuss?

16         MR. BURKE:  No.  Thank you.

17         THE COURT:  All right.  My thanks to all counsel, to

18   probation, and to our marshal.

19         THE COURT DEPUTY:  All rise.

20         (The proceeding concluded at 2:54 p.m.)

21                         * * * * *

22

23

24

25

42

1                          **C E R T I F I C A T I O N**

2              I, Gillian Lawrence, court approved transcriber,

3    hereby certify that the foregoing, pages 1 to 41,  is a correct

4    transcript from the official electronic sound recording of the

5    proceedings in the above-entitled matter, and to the best of my

6    ability.

7

8

9    *Gillian Lawrence*  CER-255, CET-255              DATE:   November 9, 2017

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25